Georgianna KIDD, Administratrix of the Estate of Donald Kidd, Jr., et al., Appellants,

v.

C. C. PRICE et al., Appellees.

Court of Appeals of Kentucky.

Oct. 2, 1970.

As Modified on Denial of Rehearing Jan. 29, 1971.

Stanley R. Hogg, Creech & Hogg, Ashland, for Georgianna Kidd.

Howard VanAntwerp III, Cardwell, VanAntwerp, Welch & Hughes, Ashland, for Hartford Accident & Indemnity Co.

David Hermansdorfer, Diederich Hermansdorfer & Wilson, Ashland, for appellee.

CLAY, Commissioner.

Plaintiff appellant's decedent died as the result of burns sustained in an explosion which occurred on premises owned by defendant·appellees. The jury found for defendants. The principal alleged reversible error is that the court erroneously instructed the jury.

The place of the accident was a restaurant leased by one Kizzee from defendants since 1957. The deceased was an employee of Kizzee. He was fatally burned when an explosion occurred in the kitchen area. There was evidence, and the jury specifically found, that the cause of the explosion was gasoline vapors. There was evidence they had emanated from a floor drain. There was also evidence that this drain did not have a "P-trap" which is required by state and local plumbing codes.

When this floor drain was installed and by whom is not known. Defendants originally constructed the principal building in 1949. The premises have been leased since that date to several tenants. In 1951 a tenant at his own expense constructed an addition to the building. In 1954 another tenant made a further addition. The explosion took place in a part of the building added by these former tenants. Since the date of the original construction the defendants had neither installed nor repaired any plumbing on the premises nor had they knowledge of any defective plumbing.

The jury found for the defendants under the following instruction:

"If the jury believe from all the evidence that some tenant prior to Richard Kizzee under his lease and at his own cost and for his own use installed the floor drain and failed to place a P-trap in same, and that defendants, C. C. Price and Eva O. Price, did not know and by the exercise of ordinary care could not have known of the failure of such tenant to place a P-trap in the floor drain, then the law is for the defendants and you will so find."

It is plaintiff's basic contention that the trial court failed to submit to the jury the proper issue of liability. It is urged that as a matter of law defendants were negligent because they had violated the state plumbing code [1] in failing to in-

---

1. Promulgated pursuant to KRS 318.130.

stall a "P-trap". Defendants take the position that they owed the same duties to the decedent as they did to the tenant Kizzee, and that the tenant takes the premises as he finds them and the landlord owes him no duty except to disclose the existence of a known latent defect. These in substance were our holdings in Franklin v. Tracy, 117 Ky. 267, 77 S.W. 1113, 78 S.W. 1112 (1904); Cohen v. White, 206 Ky. 209, 266 S.W. 1078 (1924); Carver v. Howard, Ky., 280 S.W.2d 708 (1955); and Whitehouse v. Lorch, Ky., 347 S.W.2d 512 (1961). However, those cases involved common law duties.

It is contended by plaintiff that defendants, as owners of the premises, violated a statutory duty imposed on them by the plumbing code. In Mullins v. Nordlow, 170 Ky. 169, 185 S.W. 825 (1916); Robenson v. Turner, 199 Ky. 642, 251 S.W. 857 (1923); Greyhound Terminal of Louisville v. Thomas, 307 Ky. 44, 209 S.W.2d 478 (1947); and Blue Grass Restaurant Company v. Franklin, Ky., 424 S.W.2d 594 (1968), we held that noncompliance with applicable safety laws and regulations which results in injuries they were designed to prevent constitutes negligence. We have recently considered the question of the landlord's liability for violation of statutory duties in Rietze v. Williams, Ky., 458 S.W.2d 613 (1970). We had before us the same plumbing code here involved. There we held that the landlord (or one standing in his shoes) who undertakes to make an installation on the premises is liable to an injured person if the installation does not conform to safety regulations, having the force of law and the defective condition is the cause of the injury, even though the work is performed by an independent contractor.

Section 30 of the regulations here applicable provides that "all plumbing installed by the owner" shall comply with the requirements of the plumbing code. In fact, the defendants did not install the floor drain. It is not known who did or when,

but apparently it was done many years ago. We can assume it was installed by one of the tenants in the early Fifties when structural changes were made in the kitchen area.

It is contended by plaintiff that since defendants under their leases had a right to reject the additions made by the tenants, they had control of the installation and under the doctrine of the Rietze case could not delegate the duty of compliance with the plumbing code to others. We are inclined to go along with plaintiff's argument insofar as it proposes that if the landlord is obliged to or undertakes to make an installation, he cannot avoid responsibility for violation of specific safety regulations which impose on him an absolute duty by having the tenant do the work. In this sense a tenant is in the same class as the independent contractor, which we had in the Rietze case. However, to say that a landlord insures the safety of every plumbing installation made by his tenant for the tenant's benefit would stretch the scope of statutory responsibility beyond reasonable limits.

There possibly could be a common law liability for a latent defect if defendants had notice or knowledge of it. While in the present case they probably had knowledge that their tenants were making structural changes on the premises by enlarging the kitchen area, there is no showing they knew that a floor drain would be required or would be installed, much less that it was defective, if it was. It is therefore our opinion that the instruction under which the jury found for the defendants substantially presented the controlling issues in the case. That is, if the installation was made by the tenant for his own use and if it was defective, did the defendants know or by the exercise of ordinary care could they have known of such condition?

We do not know whether the jury, acting under this instruction, determined that the floor drain complied with the plumbing code, or, if it was defective, the defendants

had no knowledge of it or reasonably could not be charged with notice. In answer to an interrogatory as to whether there was a "P-trap" in the floor drain, the jury answered, "Unknown". We may say in passing that this instruction was more favorable to the plaintiff than she was entitled to because it did not require the jury to find that the absence of the "P-trap", if such condition existed, was the proximate cause of the decedent's death. As a matter of fact, in answer to another interrogatory the jury was unable to determine whether the gas which caused the explosion came through the floor drain. In conclusion on this point, we reiterate that the criticized instruction fairly presented (with the exception above noted) the significant issues presented by the facts of this case.

Plaintiff further contends that the court improperly submitted interrogatories to the jury, some of which we have discussed above, the argument being that they presented factual issues which were not in the case. Plaintiff says she conclusively proved that there was no "P-trap" in the floor drain, that the gas was in the drainpipe, and that the gas came through floor drain. We cannot accept this assertion. This was a most unusual accident and the cause of the explosion is shrouded in mystery. It is true the plaintiff by circumstantial evidence and the testimony of an expert developed a plausible theory concerning the cause. On the other hand, we cannot say that this theory was conclusively proven. No one traced the source of the gas. How gasoline could get into the drainpipe was a matter of speculation. There was evidence the drain was substantially stopped up. There was an area of uncertainty which the jury properly could be called upon to resolve. We think the interrogatories fairly presented pertinent factual questions.

It may have been somewhat unusual to submit interrogatories and instructions on other phases of the case at the same time without coordinating them, because actually the answers to the interrogatories ended the case and it was unnecessary to find under the instruction for the defendants. Perhaps the jury did its own coordinating. In any event, it is our opinion that the plaintiff had a fair trial under the applicable law.

The judgment is affirmed.

EDWARD P. HILL, Jr., C. J., and MILLIKEN, NEIKIRK, PALMORE, REED and STEINFELD, JJ., concur.

OSBORNE, J., not sitting.